UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JON ROBERT ADAMS, | ) |
| Plaintiff | ) ) ) |
| v. | ) 2:20-cv-00424-NT |
| WELLPATH OF MAINE, et al., | ) ) ) |
| Defendants | ) |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendants Wellpath LLC,[1] Wendy Riebe, Yvonne Peabbles, and Gina Dasilva provided him with inadequate medical care while he was incarcerated at the Maine State Prison. (Amended Complaint, ECF No. 28.) Plaintiff asserts Defendants acted with deliberate indifference in violation of the Eighth Amendment.[2]

Defendants have moved for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies, and, alternatively, to dismiss one of Plaintiff's claims for failure to state enough facts to support the claim. (Motion, ECF No. 61.)

---

[1] In his amended complaint, Plaintiff identifies Defendant Wellpath as Wellpath of Maine. In the motion to dismiss and for summary judgment, Defendants refer to Defendant Wellpath as Wellpath LLC.

[2] After Defendants filed their motion, Plaintiff voluntarily moved to dismiss Defendant Freda Estey. (Motion, ECF No. 73.) The Court granted Plaintiff's motion. (Order, ECF No. 74.)

Following a review of the record and after consideration of the parties' arguments, I recommend the Court grant Defendants' motion for summary judgment as to two of Plaintiff's claims and grant the motion to dismiss Plaintiff's other claim.

## I. MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges Defendants acted with deliberate indifference to his medical needs in (1) delaying emergency medical treatment for a serious infection, (2) denying physical therapy following Plaintiff's recovery from the infection, and (3) delaying Plaintiff's hip-replacement surgery. (Am. Compl. ¶¶ 91-93.) Defendants move for summary judgment based on Plaintiff's failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e. (Motion at 12-20.)

**A. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on

one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

**B. Factual Background**

    **1. Plaintiff's Medical History**[3]

On August 1, 2019, Plaintiff, an inmate at the Maine Correctional Center (MCC), was injured when he jumped from a second-floor tier at MCC to the concrete floor below. (Am. Compl. ¶ 15.) Plaintiff was transported to a hospital where he underwent surgery to his right hip and femur, which included the insertion of metal screws, rods and a plate. (*Id.* ¶¶ 16-17.) Upon his discharge from the hospital, Plaintiff resided in the Maine State Prison infirmary until December 17, 2019. (*Id.* ¶¶ 18-19.) He then returned to MCC. (*Id.* ¶ 19.)

On August 2, 2020, Plaintiff developed pain in and around his right hip and leg. (*Id.* ¶ 20.) As the pain worsened, movement became difficult and Plaintiff was confined to his bed. (*Id.* ¶ 21.) Plaintiff alleges that his requests to be taken to the hospital were denied by "medical officials," who merely took his vital signs and advised him to continue taking Tylenol and Naproxen. (*Id.* ¶¶ 23-24.) Defendants Peabbles and Dasilva, nurse practitioners with Defendant Wellpath LLC, responded to Plaintiff's requests. (*Id.* ¶ 27.)

---

[3] This section of the factual background is drawn from Plaintiff's amended complaint. For purposes of evaluating Defendant's motion to dismiss, discussed below, these factual allegations are deemed true. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

3

When Plaintiff again requested to be taken to the hospital, Defendants Peabbles and Dasilva told him they would authorize a medical order to have his meals delivered to his cell, and they advised him to keep taking Tylenol and Naproxen. (*Id.*) He told them the medications were not helping. (*Id.*) Defendant Peabbles said that she would arrange for an order for Tramidol. (*Id.*)

On August 8, 2020, Plaintiff was placed in a wheelchair and transported to the prison's medical department, where he was seen by Defendants Peabbles, Dasilva and Riebe. (*Id.* ¶¶ 28-29.) He was then transported by ambulance to a hospital, where he was diagnosed with a methicillin-resistant staphylococcus aureus (MRSA) infection surrounding the metal that previously had been surgically inserted into his right hip and femur. (*Id.* ¶ 33.) The infection had entered Plaintiff's bloodstream. (*Id.* ¶¶ 31, 33, 35.) Plaintiff was admitted to the hospital and on August 9, surgeons removed the metal in Plaintiff's right hip and femur and drained the infection. (*Id.* ¶ 37.) On August 12, a peripherally inserted central catheter (PICC line) was inserted in Plaintiff's right arm to deliver antibiotics. (*Id.* ¶ 41.) Plaintiff was then discharged from the hospital and transported to the Maine State Prison infirmary. (*Id.* ¶ 42.) Six weeks later, the PICC line was removed, and Plaintiff received oral antibiotics for six weeks. (*Id.* ¶ 44.) Plaintiff was discharged from the infirmary on September 23, 2020 and transported to the MCC. (*Id.* ¶ 46.)

On that same day, during a follow-up appointment, Plaintiff's orthopedic surgeon prescribed physical therapy for Plaintiff's right hip. (*Id.* ¶ 47.) Upon returning to the MCC, Plaintiff gave the prescription for physical therapy to the intake nurse. (*Id.* ¶ 51.) Although

4

Plaintiff repeatedly asked medical personnel to schedule his physical therapy, physical therapy was not scheduled before Plaintiff commenced this action on November 12, 2020. (*Id*. ¶¶ 52-54.)[4]

Plaintiff informed Defendants Peabbles and Dasilva that his pain was increasing and that his pain medication was ineffective. (*Id*. ¶¶ 55, 58.) Defendant Dasilva and others told Plaintiff that a physical therapy appointment would be scheduled soon. (*Id*. ¶¶ 55, 61.) On October 6, 2020, Wellpath personnel informed Plaintiff that a referral for physical therapy was made, but scheduling could take a week or two because of the pandemic. (*Id*. ¶ 66.) When Defendant Riebe met with Plaintiff on October 14, 2020, she informed him that his blood-levels needed monitoring before his physical therapy would be scheduled. (*Id*. ¶ 68.) Plaintiff asserts that Defendant Riebe stated that Plaintiff was in custody and "it's what we say that matters." (*Id*.) He contends that she also told him if he walked outside in the recreation yard he would not need physical therapy. (*Id*.)

**2. Plaintiff's Grievance Filings**

Maine's Department of Corrections (MDOC) provides an administrative grievance procedure as required under Maine law, 34-A M.R.S. § 1402(5). There is a general grievance procedure and a medical complaint grievance procedure; the procedures have similar provisions and require the use of the same grievance form. (Defendants' Statement of Material Facts (DSMF) ¶ 8, ECF No. 62.)[5]

---

[4] Plaintiff began physical therapy on December 1, 2020. (*See* Withdrawal of Motion for Preliminary Injunction/Temporary Restraining Order, ECF No. 17.)

[5] Plaintiff admits in part and denies in part this factual assertion, but he does not specify the basis for his denial. (Plaintiff's Statement of Material Fact (PSMF) ¶ 8, ECF No. 70.) Because Plaintiff has failed to

5

Plaintiff was provided with a copy of the Prisoner Handbook upon his admission to MCC.  (DSMF ¶ 5.)  The Prisoner Handbook typically includes the "Medical and Mental Health Care Policy" for prisoner's medical-related grievances.  (*See* DSMF ¶ 6.)  Plaintiff, however, asserts his copy of the Prisoner Handbook did not include the policy.  (PSMF ¶ 6.)

On October 5, 2020, Plaintiff filed a grievance with Defendant Riebe. Plaintiff wrote:

> On 9-23-20, I returned back here to MCC from the MSP Infirmary.  On this date, before arriving back to MCC, I had a 12:30 PM follow-up Doctors Appointment at my Orthopedic Surgeons Office in Portland.  At this appointment, my Orthopedic Surgeon ordered me to weekly physical therapy and sent me out with a prescription for physical therapy.  When I arrived back to MCC, RN Chrissy did my intake.  I turned over my doctor's paperwork including the prescription paperwork to Chrissy at her request.  On Monday 9-28-20, I had an appointment here with Gina the Medical Provider.  When I asked Gina about me starting physical therapy as ordered by my Orthopedic Surgeon she told me that Medical Provider Yvonne approved it.  Then on Friday, 10-3-20, during a sick call appointment I asked again about starting physical therapy.  Crystal Carrier told me that I was scheduled to go for my first session "this week" but for security reasons, she couldn't tell me when.  Nurse Frieda does all the scheduling for outside appointments.  I've seen Frieda several times and asked her if I'm scheduled to go [to] my physical therapy.  Each time Frieda has told me that she's "seen nothing," "knows nothing about my physical therapy," and continues to tell me each time that "she'll look into it," but apparently does not bother to look into this.

(Exhibit to Opposition to Motion, ECF No. 65-1, PageID # 521).

Although the parties disagree on the details, some effort was made to resolve Plaintiff's grievance informally.  (DSMF ¶¶ 26-27; PSMF ¶¶ 26-27.)  Defendant Riebe met

---

properly support his denial, the Court considers this statement of fact to be undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2).  Moreover, the fact is self-evident from a review of the text of the policies.

with Plaintiff and informed him that she had concerns about his recent bloodwork and that, as a result, staff needed to monitor his blood-levels prior to his attending physical therapy. (DSMF ¶ 26.) Defendant Riebe believed the efforts were successful in resolving Plaintiff's complaint. (DSMF ¶ 28.)[6] Defendant Riebe completed the grievance form and sent it to Plaintiff via the prison mail system. (DSMF ¶ 29.) Plaintiff contends that he never received the completed form. (PSMF ¶ 29.) Defendant Riebe did not keep a copy of the completed form. (DSMF ¶ 29.)

On October 14, 2020, Susan Carr, Deputy Warden of Programs at MCC, received through the prison mail system a grievance from Plaintiff, which grievance was dated October 12, 2020. Plaintiff wrote:

> I'm filing this FORMAL Complaint against the facility's Contracted Medical "Health Service Administrator" Wendy Riebe for her failure to Adhere to MDOC Policy [and] Procedure of the Prisoner Grievance Process. Specifically "Procedure B: # 4." On 10-5-20, I Completed and Submitted a Grievance to Wendy regarding Medical Officials failing to follow the Written Prescription order from my Outside Orthopedic Surgeon for me to have Physical Therapy because Physical Therapy is Very Crucial for my Physical Recovery. Wendy is the Highest level that Oversees Medical Officials and Medical Grievances are Supposed to be Sent to her. Pursuant to MDOC Policy of the Prisoner Grievance Process, Procedure B # 4 states that "The Supervisor or designee shall return to the Prisoner the original form with the date of return noted, NO LATER THAN WITHIN FIVE (5) DAYS of the Contact, Keeping a Copy for their files." Wendy has failed to informally resolve my Grievance, and has NOT returned it to me so that I Can Continue to Utilize the Grievance Process. To date, it's been (7) days. WHEREFORE, based on the following, this is being forwarded to the facility's Dep. Warden that Oversees WELLPATH Medical and its Officials.

---

[6] Plaintiff denies that Defendant Riebe believed there had been a resolution. (PSMF ¶ 28.) Plaintiff, however, has presented no factual basis for his denial and, therefore, the Court considers the fact to be undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2).

7

(DSMF ¶ 30; Declaration of Susan Carr (Carr Decl.) ¶ 13, ECF No. 41; Exhibit B to Carr Decl., ECF No. 41-2, PageID # 272.)[7] Deputy Warden Carr subsequently met with Defendant Riebe to discuss the matter (DSMF ¶¶ 33-35.) On October 14, 2020, Deputy Warden Carr completed the informal resolution portion of the October 12, 2020 grievance form, checking the box "Complaint Not Resolved" and wrote, "I made contact with Wendy R[ie]be today. She had met with you and your mother was on the phone. She also said that your blood work needed to be monitored prior to having physical therapy." (DSMF ¶ 37.) Deputy Warden Carr met with Plaintiff and Defendant Riebe on October 20, 2020 after Deputy Warden Carr had received a second, incomplete grievance from Plaintiff regarding Defendant Riebe. (DSMF ¶¶ 38-40.)

The Grievance Review Officer (GRO) received a grievance from Plaintiff on October 20, 2020. (DSMF ¶ 43.) The grievance form was the same form Plaintiff had previously submitted to Deputy Warden Carr, which had her signatures and description of the actions she had taken to resolve Plaintiff's complaint. (*Id.*) The GRO stamped the form with the date it was received, and noted the grievance's log number, 2020-MCC-148. (DSMF ¶ 44.) The GRO also entered the log number into the MDOC grievance tracking system. (*Id.*)

The GRO informed Plaintiff that his grievance had been received and was under investigation. (DSMF ¶ 45.) The GRO also noted that the investigation would be complete

---

[7] Plaintiff denies this factual allegation with no factual basis. The Court considers the statement to be undisputed for purposes of this motion. Plaintiff also included a copy of the grievance form he had previously submitted to Defendant Riebe, as well as a cover letter to Deputy Warden Carr. (Carr Decl. ¶ 13 & Ex. B, PageID # 273-74.)

and a decision sent to Plaintiff by November 20, 2020, unless an extension of time was necessary. (*Id.*)

On October 22, 2020, the GRO denied Plaintiff's grievance and reported the following to Plaintiff:

> I reached out to the Department's Health Service Coordinator Holly Howieson to review your Medical case. Holly Responded that you were seen by the Provider here at MCC on 9/28/20, 10/9/20, 10/14/20, and 10/15/20. On 10/20/2020 you were transported out of MCC to the Orthopedic Doctor. Your Physical Therapy needs will come out of that Orthopedic appointment. MCC medical is waiting to hear back from [the] Orthopedic team as to what direction to go for your physical therapy.
>
> With all the dates that you have seen the MCC provider and being sent out to see the specialist it is evident that MCC medical is taking care of your medical needs.

(DSMF ¶ 46.) The GRO included an appeal form and an envelope pre-printed with the GRO's address with the written denial. (DSMF ¶ 47.)

On October 23, 2020, the GRO received a letter from Plaintiff, in which Plaintiff wrote:

> At your request, after we spoke, here's a copy of the grievance I sent to Wendy on 10/5/20, that she <u>still</u> has failed to return to me. She still needs to Follow Policy and return the grievance to me so I can continue to utilize the grievance process if I choose to and she's Failed intentionally to do this – in which sabotages and interferes with my ability to properly utilize the grievance process[.] Please Add this to the case.

(DSMF ¶ 48; Exhibit B to Declaration of Shawn Emerson (Emerson Decl.), ECF No. 42-7, PageID # 309.) Plaintiff included a copy of the October 5, 2020 grievance form and a copy of the envelope addressed to Defendant Riebe. (Emerson Decl., Ex. B, PageID # 310-311.)

9

On October 25, 2020, Plaintiff appealed from the GRO's denial of grievance 2020-MCC-148, which was received by the GRO on November 2, 2020. (DSMF ¶ 49.) Plaintiff explained the reasons for his appeal:

> The original Grievance Was regarding Wellpath Medical Health Service Administrator Wendy Riebe's failure to Adhere to the MDOC Prisoner Grievance Policy. My Complaint Was Wendy's Failure to return back to me my Grievance Pursuant to Procedure B # 4. To date, Wendy has still failed to return my Grievance to me. Her failure to return my Grievance to me Prevents me from properly, effectively utilizing the Prisoner Grievance Process to go to the next level with that Grievance. Had Wendy forwarded that back to me, Per Policy, I Could have forwarded it to the GRO for his review. This Response from the GRO fails to mention Anything regarding Wendy's failure to follow the Grievance Policy Which Was my initial Complaint. Why? Requesting level 2 appeal if this is denied. Also, Contrary to the GRO's response, it's stated that "My Physical Therapy needs Will Come out of the 10/20/20 Orthopedic Appt." My Orthopedic Ordered my Physical therapy on 9/23/20 (see attached Order Copy).

(DSMF ¶ 50.)

Plaintiff attached the "Physical Therapy Request" he received from his orthopedic providers to his appeal form. (DSMF ¶ 51; Exhibit H to Emerson Decl., ECF No. 42-8, PageID # 313.) The GRO logged and submitted the appeal, along with the all the documentation related to the grievance, to the Chief Administrative Officer (CAO) of MCC, Warden Scott Landry. (DSMF ¶¶ 52-53.) Glean Brown, Senior Deputy Warden of Security at MCC, who served as the Warden's designee in responding to Plaintiff's grievance, prepared the Warden's response. (DSMF ¶ ¶55, 57.) The response stated:

> I've received your grievance relaying that you did not receive a documented answer to your original complaint from HSA Wendy Riebe. Grievance Review Cpt. Emerson contacted Riebe for her response. Riebe relayed she had a meeting with you concerning your complaint, and thought you and her had come to a resolution. I contacted DW Sue Carr who had attended a different meeting between you and HSA Riebe. During that meeting your

> mother was a part of, via telephone. It does appear, that [HSA] Riebe and DW Carr met with you in good faith, in an attempt to resolve your issue.
>
> As for you alleging you did not receive your original grievance form back from HSA Riebe; I have no way of proving that to be true; therefore, your appeal is denied.

(ECF No. 42-9.) Deputy Warden Brown brought the response to the GRO. (Declaration of Glean Brown ¶ 7, ECF No. 40.) The GRO wrote the grievance number on the printed response (2020-MCC-148) and the date on which he believed Deputy Warden Brown had prepared the response (November 13, 2020). (Emerson Decl. ¶ 27.)

Plaintiff underwent hip-replacement surgery and was transported to the prison infirmary on November 16, 2020. (Affidavit of Jon Adams (Adams Aff.) ¶ 4, ECF No. 70-1.) On the same day, the GRO placed Deputy Warden Brown's response to Plaintiff's second-level appeal in an envelope addressed to Plaintiff along with another appeal form and a pre-addressed envelope for submitting an appeal to the GRO. (Emerson Decl. ¶ 29.) Deputy Brown delivered the outer envelope containing the materials to the MCC employee who handles mail and requested that she add postage and put it in the outgoing U.S. mail. (*Id*.) When the GRO did not receive a third-level appeal from Plaintiff, the GRO logged the grievance as "closed" on December 2, 2020. (*Id*. ¶ 31.)

Plaintiff asserts that he received the written response to his second-level appeal in the second week of December, but that it included neither a date nor the grievance number. (Adams Aff. ¶¶ 6, 12.) He also maintains that he did not receive the third-level appeal form or the pre-addressed envelope. (*Id*. ¶ 6.) Plaintiff contends he would have filed the appeal if he had received the appeal form. (*Id*. ¶¶ 9-10; *see* DSMF ¶¶ 60-61.)

**C. Discussion**

>The PLRA provides:
>
>No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "'Prison conditions' under [§ 1997e(a)] include individual instances of medical mis- or non-treatment." *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006).

The uncontroverted evidence establishes that Plaintiff did not file a grievance regarding the alleged delay in receiving hip replacement surgery or the alleged delay in the diagnosis and treatment of MRSA. Plaintiff, therefore, failed to exhaust the administrative remedies as to claims based on the alleged delay in hip replacement surgery and as to the diagnosis and treatment of MRSA. Accordingly, Defendants are entitled to summary judgment as to the two claims.

Plaintiff did file a grievance regarding Defendants' alleged failure to provide physical therapy. Plaintiff initially filed an informal grievance with Defendant Riebe. Plaintiff asserts that Defendant Riebe never returned the grievance form as required under the medical complaint grievance policy, and, therefore, he was unable to address his initial complaint through the formal grievance process. In other words, Plaintiff contends that

his claims are not barred by the PLRA because Defendant Riebe's failure to comply with the MDOC's grievance policy rendered further remedies unavailable.

Section 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Compliance with prison grievance procedures ... is all that is required ... to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

A defendant may raise the PLRA's exhaustion requirement as an affirmative defense. *Jones*, 549 U.S. at 216; *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, Defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom.*, *Scott v. Albino,* 574 U.S. 968 (2014). Thereafter, Plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

13

The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. --, 136 S. Ct. 1850, 1859 (2016). "First, ... an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an otherwise available grievance process is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The Court, however, does not have to determine whether the administrative remedy was unavailable based on Defendant Riebe's alleged failure to respond to Plaintiff's initial grievance as to the physical therapy treatment.[8] As explained below, because Plaintiff has failed to assert an actionable claim related to the physical therapy treatment, dismissal of that claim is appropriate.

---

[8] The issue would be whether the medical and general grievance policies, which provide if "the complaint is not resolved for any reason, the prisoner must file a grievance form within the original fifteen (15) day time limit in order to utilize the grievance process," were sufficient to place Plaintiff on notice that despite the lack of response, he was required to proceed to the next step of the grievance process. *See, e.g., Maraglia v. Maloney*, 499 F. Supp. 2d 93, (D. Mass. 2007) (denying summary judgment to defendants where prison regulations were "silent about what an inmate must do if the [grievance officer] does not respond to his grievances ….").

## II. MOTION TO DISMISS

### A. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue. *Id.* The complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### B. Discussion

"Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights." *Saldivar v. Racine*, 818 F.3d 14, 18

(1st Cir. 2016); see 42 U.S.C. §1983. To prevail on such a claim, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. From this prohibition, "courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "The Eighth Amendment, applied to the states through the Fourteenth Amendment, protects incarcerated people from state corrections officials' 'deliberate indifference to serious medical needs.'" *Zingg v. Groblewski*, 907 F.3d 630, 634-35 (1st Cir. 2018) (quoting *Feeney v. Corr. Med. Servs.*, Inc., 464 F.3d 158, 161-62 (1st Cir. 2006); *see Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015). To allege "a claim of deliberate indifference based on inadequate or delayed medical care, 'a plaintiff must satisfy both a subjective and objective inquiry.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011)).

First, to demonstrate a claim under the objective prong, a plaintiff "must show that []he has a serious medical need for which []he has received inadequate treatment." *Kosilek*, 774 F.3d at 85. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*,

511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). This "requires that the need be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Kosilek*, 774 F.3d at 82 (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). However, this "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.* (citations omitted). "Rather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'" *Id.* at 83 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)).

Second, under the subjective prong, "a plaintiff must show 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt*, 645 F.3d at 497). Thus, "even if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek*, 774 F.3d at 83. "For purposes of this subjective prong, deliberate indifference 'defines a narrow band of conduct,' and requires evidence that the failure in treatment was purposeful." *Id.* (citation omitted) (quoting *Feeney*, 464 F.3d at 162); *see Perry*, 782 F.3d at 79 (stating that deliberate indifference "requires evidence that the absence or inadequacy of treatment is intentional"). A constitutional claim may arise when "the treatment provided [was] so inadequate as 'to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.'" *Leavitt*, 645 F.3d at 497 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). However, "when a

17

plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation." *Feeney*, 464 F.3d at 162 (alterations and quotation marks omitted).  Moreover, "[p]rison officials 'who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Giroux v. Somerset County*, 178 F.3d 28, 33 (1st Cir. 1999) (quoting *Farmer*, 511 U.S. 825 at 844); *see Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002) (recognizing that the focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response").

Plaintiff has alleged facts that would support a finding that he had a serious medical condition for which physical therapy was prescribed.  Plaintiff has thus satisfied the objective prong of the deliberate indifference standard.  *See Kosilek*, 774 F.3d at 82.  To satisfy the subjective prong of the deliberate indifference standard, Plaintiff's allegations must also support a finding that the alleged inadequate medical care was "purposeful." *Kosilek*, 774 F.3d at 83.  Plaintiff was treated by medical staff with pain medication from September 23, 2020 through the date of the original complaint, November 8, 2020, and was seen by medical personnel, including Defendants Dasilva, Peabbles and Riebe, on multiple occasions during that time.[9]  Where, as here,  the record shows that Plaintiff was

---

[9] For example, Plaintiff had appointments with Defendant Dasilva on September 28, 2020 and October 9, 2020 (at which time Defendant Dasilva increased his pain medication), and he met with Defendant Riebe concerning his desire to receive physical therapy on October 14, 2020.  (Am. Compl. ¶¶ 55, 58, 68.)  Plaintiff also had appointments with his outside medical provider on October 20, 2020.  (*Id*. ¶ 80.)

18

"afforded continual medical care" and that "prison staff treated and evaluated him on each visit," Plaintiff has not shown that Defendants possessed the requisite mental state necessary to prove deliberate indifference. *Rhines v. Bledso*, 388 Fed. App'x 225, 227 (3rd Cir. 2010).

Moreover, Plaintiff was informed that the delay in scheduling physical therapy was due in part to the Wellpath Defendants' determination that Plaintiff's blood-levels required further monitoring. Although "'[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain,'" *Murphy v. Corizon*, No. 1:12-CV-00101-JAW, 2012 U.S. Dist. LEXIS 181538, *24 (D. Me. Oct. 24, 2012) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)), in instances where a "plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment . . . falls short of alleging a constitutional violation," *Feeney*, 464 F.3d at 162 (alterations and quotation marks omitted); *see also Rhines*, 388 Fed. App'x at 227 (one month delay in receiving MRI for inmate's knee injury did not rise to the level of deliberate indifference); *Griffin v. Betancourt*, Civil Action No. 19-CV-4670, 2019 WL 5901497, at *4-5 (E.D. Pa. Nov. 8, 2019) (allegation of at least five week delay in seeing neurologist did not support plausible deliberate indifference claim).[10]

---

[10] If Plaintiff's allegations are construed to assert a claim against the individual defendants, Plaintiff has not asserted a claim against Wellpath LLC. Wellpath LLC is a private contractor that provides medical services at a state prison and, as such, is generally treated as a municipality for purposes of section 1983 claims.[10] *See Wall v. Dion*, 257 F. Supp. 2d 316, 319-20 (D. Me. 2003); *see also Witham v. Corizon, Inc.*, No. 2:12-cv-00146-NT2012 2012 WL 5267657, at *7 & n.4 (D. Me. Sep. 17, 2012). "[A]lthough a municipality may not be held liable under a theory of respondeat superior for an employee's constitutional violation, it may be held liable when 'execution of [the municipality's] policy or custom . . . inflicts the injury' and is

### III. CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for summary judgment as to Plaintiff's claims based on the alleged delay in the diagnosis and treatment of MRSA and the alleged delay in the treatment of Plaintiff's hip before and through surgery. I also recommend the Court grant Defendants' motion to dismiss and dismiss Plaintiff's claim based on the alleged delay in providing physical therapy services to Plaintiff.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of July, 2021.

---

the 'moving force' behind the employee's constitutional violation." *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish liability, courts "look at whether there was a 'direct causal link' between the policy and the violation, or if the policy 'actually caused' the violation." *Burrell v. Hampshire County*, 307 F.3d 1, 10 (1st Cir. 2002) (quoting *Canton v. Harris*, 489 U.S. 378, 385, 391 (1989)). Plaintiff has not alleged a custom or policy of Wellpath LLC that was the "moving force," *Saldivar*, 818 F.3d at 20, behind his alleged constitutional violation. As such, Plaintiff is unable to show a "'direct causal link' between the policy and the violation." *Burrell*, 307 F.3d at 10 (quoting *Canton*, 489 U.S. at 385). Plaintiff, therefore, has failed to plead facts to support a plausible claim for relief against Wellpath LLC.

20